IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED SPRINT PCS CALL NUMBER **843-818-8441** | Case No. 3:18 mj 72<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, **Ellen Duffy**, being first duly sworn, hereby depose and state as follows:

#### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **843-818-8441**, (the "Target Cell Phone"), whose service provider is **SPRINT PCS**, a wireless telephone service provider headquartered at **6480 Sprint Parkway, Overland Park, Kansas, 66251**. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI), and I have been so employed since January 2018. I am currently assigned to work on the Eastern Panhandle Drugs and Violent Crimes Task Force (EPD&VCTF). Prior to my employment with the FBI, I was employed as a Sergeant with the University of Florida Police Department (UFPD) in Gainesville, Florida, for approximately eight years. During my employment with UFPD, I served as a uniformed Patrol Officer, a Detective, and a Detective Sergeant. Prior to my employment with UFPD, I was employed as a Special Agent with the United States Department of Education, Office of Inspector General, for approximately two years. Through my training and experience in these law enforcement positions, I have become familiar with the manner in which

illegal drugs are transported, stored, and distributed; the methods of arranging drug transactions; the methods of payment for such drugs; the possession and use of firearms in connection with the trafficking of such drugs; and the manner in which narcotics traffickers store and conceal the proceeds of their illegal activities.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) and 846 have been committed, are being committed, and will be committed by ANTHONY HARRISON (hereinafter referred to as "HARRISON"). There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

5. The EPD&VCTF is currently investigating a network of narcotics dealers operating in and around Martinsburg, West Virginia, which is located in Berkeley County within the Northern District of West Virginia. Through the use of confidential informants (CIs) and surveillance, JESSICA NICHOLSON (hereinafter referred to as "NICHOLSON") and HARRISON were identified as subjects of the investigation.

6. During the course of the investigation, investigators developed a CI – CI Pub (S-00089421) – who could purchase heroin from NICHOLSON and HARRISON.

2

7. During the course of the investigation, a pen register was authorized on NICHOLSON's telephone number. The pen register indicated numerous contacts between NICHOLSON's phone and the Target Cell Phone. On June 28, 2018, a subpoena was issued to **SPRINT PCS** requesting subscriber information for the Target Cell Phone. The results indicated that the subscriber's name was ANTHONY HARRISON.

8. Based upon information from CI Pub, surveillance, and open-source research, NICHOLSON and HARRISON are known to be in a personal relationship, and are known to reside together at 222 Surrey Court, Martinsburg, West Virginia.

9. On June 25, 2018, CI Pub conducted a controlled purchase of a quantity of heroin from HARRISON for $60.00, at NICHOLSON and HARRISON's residence. The purchase was arranged between CI Pub and NICHOLSON via NICHOLSON's telephone, but HARRISON provided the heroin to CI Pub and accepted CI Pub's payment. CI Pub was equipped with an audio recording device during the controlled purchase, and video surveillance was conducted during the purchase.

10. On June 28, 2018, CI Pub encountered HARRISON at a convenience store in Martinsburg, West Virginia. HARRISON provided CI Pub with the Target Cell Phone number as his phone number and advised CI Pub to contact him any time via that number.

11. Based on the investigation, there is probable cause to believe that the requested location information will reveal evidence of a crime. The requested location information would identify locations where HARRISON and other narcotics traffickers meet as well as where they may maintain quantities of heroin for further distribution, and will identify locations where HARRISON is obtaining heroin from his supplier(s).

3

12. In my training and experience, I have learned that **SPRINT PCS** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

13. Based on my training and experience, I know that **SPRINT PCS** can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on **SPRINT PCS**'s network or with such other reference points as may be reasonably available.

14. Based on my training and experience, I know that **SPRINT PCS** can collect cell-site data about the Target Cell Phone.

## AUTHORIZATION REQUEST

15. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

16. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

17. I further request that the Court direct **SPRINT PCS** to disclose to the government any information described in Attachment B that is within the possession, custody, or control of **SPRINT PCS**. I also request that the Court direct **SPRINT PCS** to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with **SPRINT PCS**'s services, including by initiating a signal to determine the location of the Target Cell Phone on **SPRINT PCS**'s network or with such other reference points as may be reasonably

5

available, and at such intervals and times directed by the government. The government shall reasonably compensate **SPRINT PCS** for reasonable expenses incurred in furnishing such facilities or assistance.

18. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

Respectfully submitted,

*Ellen Duffy*
Ellen Duffy
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on July 5th, 2018.

HONORABLE MICHAEL J. ALOI
UNITED STATES MAGISTRATE JUDGE

6